No. 23373.

CARSON REED AND JOHN A. MORGAN *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(467 P.2d 809)

Decided April 13, 1970.

424

Thomas E. Croak, William M. Griffith, for plaintiffs in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, for defendant in error.

*In Department.*

Opinion by Mr. Justice Hodges.

Plaintiffs in error, Carson Reed and John Morgan, were defendants in the trial court, where they were charged with assault with a deadly weapon, conspiracy to commit assault with a deadly weapon, robbery and

conspiracy to commit robbery. Both defendants pled not guilty to each charge. After trial to a jury, both defendants were convicted of these charges, and sentenced to concurrent terms in the penitentiary on the first three charges. At the time of sentencing, the charges of conspiracy to commit robbery were dismissed by the trial court on oral motion of the district attorney.

In the early morning hours of November 18, 1966, one Vidal S. Sisneroz and a companion went to a bar in the vicinity of 28th Avenue and Welton Street in Denver. Mr. Sisneroz testified that after ordering a beer and not wanting to "change" a ten dollar bill, he returned to his automobile to get some money which he had left there in his billfold. He testified that as he returned after getting his billfold and with the ten dollar bill still in his hands, he was set upon by the defendants who hit him, cut him, kicked him and took his money. He stated Reed cut him and Morgan took his money.

Another witness for the People testified he was driving by the bar when he saw the assault and watched the defendants leave the scene. Within a short time thereafter and near the scene, he pointed the defendants out to police officers who arrested them.

Both defendants urge reversal on the basis of fourteen assignments of error. Our examination of this record reveals no reversible error and we therefore affirm the judgment against each of the defendants. We will discuss only those alleged errors which, in our view, propose questions properly reviewable and of some significance under the record here.

I.

Both defendants contend that the operation of Crim. P. 24(b)(1) resulted in a denial of due process and equal protection. This rule provides for ten peremptory challenges for a defendant in cases where punishment may be by imprisonment in the penitentiary. If more than one defendant, then two additional peremptory challenges are allowed for each additional defendant.

426

The rule also provides that when there are multiple defendants, every peremptory challenge shall be made and considered as a joint challenge of all defendants. It is asserted on behalf of the defendants that in the event of disagreement between counsel or · defendants as to the selection of jurors, each defendant would then be limited to a fraction of the peremptory challenge allowed the People by forcing the defendants to divide the total of peremptory challenges between them.

 In the consideration of constitutional issues, we have many times adhered to the universal rule that: ". . . no person is entitled to assail the constitutionality of a statute except as he himself is adversely affected . . ." *People v. Stark and Peacock,* 157 Colo. 59, 400 P.2d 923; *Berman v. City and County of Denver,* 156 Colo. 538, 400 P.2d 434; and *Rinn v. Bedford,* 102 Colo. 475, 84 P.2d 827. This principle of law is equally applicable to a rule of trial procedure.

 The record here is devoid of anything pertaining to the selection of the jury. Whether the defendants exhausted their peremptory challenges, whether they agreed on the challenges of any prospective juror, or whether they were forced to divide the peremptory challenges between them, are not shown from this record nor does counsel represent that any of these conditions occurred. In short, there is nothing upon which this court can determine whether there are invalidities inherent in the rule; and, if there are, whether they worked against the rights of the defendants. Under such circumstances, we will not consider a constitutional issue.

II.

 The defendants also contend that the trial court erred in overruling their motion to strike the testimony of Mr. Sisneroz, the complaining witness. The address of Mr. Sisneroz, as of the date the information was filed, was shown on the information. He subsequently moved and a notice of his change of address was filed; however, the defendants or their counsel, for reasons not clear

in the record, did not receive a notice of the change. Defendants did not interview Mr. Sisneroz before trial and at the trial attempted to have his testimony excluded because they had not been given notice of the change of address.

Defendants assert that while Crim. P. 7(b)(1) does not require addresses to be included when witnesses are endorsed on an information, it is obvious that the purpose of supplying the names of witnesses on the information is to advise defendants of the identity of those who will testify against them, and to afford counsel an opportunity where deemed advisable to interview such witnesses. On this basis, the defendants argue that since the address of Mr. Sisneroz was originally included on the information, and because no notice of the change was ever sent to the defendants or their counsel, their rights were therefore substantially prejudiced. They claim this prevented them from interviewing Mr. Sisneroz prior to the trial. With regard to this argument by defendants, we note from the record that the defendants claimed no surprise when Mr. Sisneroz testified nor did they at any time seek a continuance on the ground that they had no opportunity to interview him prior to trial. Furthermore, it was not represented nor does the record reflect that the defendants or their counsel ever contacted the court or the district attorney in an attempt to ascertain Mr. Sisneroz's current address, if in fact they had sought to locate him for the purpose of interview.

We have approved the endorsing of additional witnesses prior to trial, and, in the absence of a request for a continuance or a showing of surprise, we have held that such endorsements are not grounds for reversal. *Gorum v. People,* 137 Colo. 1, 320 P.2d 340. This rationale applies with equal force to the situation involved in this assignment of error.

### III.

The evidence on behalf of the People was that Reed

made the assault with the knife and that Morgan took the money. Reed now contends that since there was no evidence presented by the People that he personally took the money the court should have granted his motion for acquittal on the robbery charge. In his turn, Morgan contends that there was no evidence presented by the People that he personally cut or stabbed Mr. Sisneroz and that the court should therefore have granted his motion for acquittal on the charges of assault with a deadly weapon and conspiracy to commit this offense.

As provided in C.R.S. 1963, 40-1-12, a person who aids, abets or assists in the perpetration of a criminal offense becomes an accessory to that offense and is chargeable and punishable as a principal. Where two or more are involved in the commission of a criminal offense and one helps the other, though not actually performing all the acts necessary to the commission of the offense, all are, nevertheless, principal offenders and are punishable as though all have committed the necessary acts. *Whitman v. People,* 161 Colo. 110, 420 P.2d 416; *Schamber v. People,* 159 Colo. 102, 410 P.2d 514; *Thompson v. People,* 139 Colo. 15, 336 P.2d 93; and *Harris v. People,* 139 Colo. 9, 335 P.2d 550.

Our review of this record reveals that the evidence was sufficient to send to the jury the issues here assailed. For the same reason, we also hold that the court's instruction on accessories, which the defendants also cite as error, was properly given. *Tanksley v. People,* 171 Colo. 77, 464 P.2d 862.

### IV.

Defendants argue the trial court erred in denying their motion for judgment of acquittal of the conspiracy charges alleging there was no direct evidence of conspiracy and no circumstantial evidence of a "convincing nature." We do not agree.

It is well established that the existence of the agreement or assent of minds necessary to constitute a conspiracy need not be proved directly, but may be

inferred from the facts proved. *Abeyta v. People,* 156 Colo. 440, 400 P.2d 431 and *La Vielle v. People,* 113 Colo. 277, 157 P.2d 621. The evidence in proof of a conspiracy will generally, from the nature of the case, be circumstantial. Though common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed in terms to have that design and to pursue it by common means. If it be proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another another part of the same so as to complete it, with a view to the attainment of that same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object. *Abeyta v. People, supra, Smaldone v. People,* 103 Colo. 498, 88 P.2d 103.

## V.

Defendants further argue the trial court should have granted their motion for a mistrial because the district attorney created an impression in the minds of the jury that defendant Reed had "numerous convictions of felonies." On cross-examination, the district attorney asked Reed if he had been convicted of burglary in addition to the conviction previously described by Reed. Counsel for Reed objected and the district attorney, after the court convened in chambers, stated his records indicated Reed had testified contrary to information in his possession and that he sought only to have Reed clarify his previous answer.

The court denied the motion for mistrial and stated that counsel would be allowed to clarify any possible doubt in the minds of the jury so that the testimony would be understood. Reed, thereafter, on both resumption of. cross-examination and on redirect, testified he had been convicted of only one felony and no others.

The trial court was in the best position to appraise this situation, and obviously determined that any improper impression that the jury may have re-

ceived was most probably blocked out by Reed's subsequent testimony. We have many times held that the trial court's ruling on a motion for a mistrial is discretionary and will not be subject to reversal unless it appears that there has been an abuse of discretion. *Maisel v. People,* 166 Colo. 161, 442 P.2d 399; *Hammons v. People,* 153 Colo. 193, 385 P.2d 592; *Hopper v. People,* 152 Colo. 405, 382 P.2d 540; and *Leick v. People,* 136 Colo. 535, 322 P.2d 674. As we view this record with respect to this alleged error, we find no abuse of the trial court's discretion.

## VI.

The defendants state that the trial court erred in not instructing the jury on the offense of simple robbery which is a lesser included offense of aggravated robbery. The defendants did not ask for or tender such an instruction to the trial court. Therefore no error was committed.

It is the established rule in Colorado that the trial court must give an instruction on simple robbery in a case in which aggravated robbery is charged only when such instruction is requested by the defendant and is in some manner an issue in the case. *Hollon v. People,* 170 Colo. 432, 462 P.2d 490; *Phillips v. People,* 170 Colo. 520, 462 P.2d 594.

## VII.

It is claimed on behalf of the defendants that the trial court erred in permitting police officers Tyus and Carlson to testify concerning an inculpatory statement made by Reed shortly after the defendants were arrested. Defendants assert that there was no showing that Reed had waived his constitutional rights as required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

At the *in camera* hearing, Officer Tyus testified that when the defendants were arrested on the street, they were verbally warned that any statement made might

be used against them in court and that they had a right
to have counsel present either retained or appointed.
After the defendants were placed in the police car, the
advisement form, which itemizes constitutional rights,
was read to them and they were then given the form to
read themselves. The officer testified that the defendants
indicated they understood and they stated that they un-
derstood what the officers had advised them of with
regard to their constitutional rights. It was immediately
after this that Reed made the statement in answer to a
question by one of the officers inquiring about how Reed
had gotten blood all over him.

As a basis for reversible error, it is now contended
that there was no showing that Reed had waived his
right to remain silent because the People did not show
that he was asked whether he wanted to waive his right
to remain silent. Neither of the defendants testified at
the *in camera* hearing. At the conclusion of the *in camera*
hearing, the trial court overruled the defendants' motion
to disallow testimony regarding this statement. As a
basis for this ruling, the court made the following
finding:

"The Court will rule that the People have established
sufficient foundation to allow in evidence statements
allegedly made by the Defendant Carson Reed; that he
was sufficiently advised of his legal and constitutional
rights prior to making any statement; that there was
sufficient waiver made knowingly by him after he had
been advised of his legal and constitutional rights. This
Court will hold specifically that it is not essential or
necessary that such waiver be reduced to writing. It may
be, as stated by Mr. DeRose [District Attorney], inferred
from the facts, the surrounding facts and circumstances."

In considering the trial court's finding, it is obvious
that the trial court felt that the circumstances here,
where the defendants were twice told of their rights, were
given the advisement form to read, and then stated that

they understood, were sufficiently strong to permit the conclusion that Reed had validly waived his right to remain silent and to have an attorney present. The fact that Reed made the inculpatory statement immediately after indicating he understood his rights is also an important circumstance. In this regard, see our recent opinion in *Billings v. People,* 171 Colo. 236, 466 P.2d 474.

It is apparently the defendants' position, although not specifically stated, that *Miranda* requires an express declination by a defendant of his right to remain silent and his right to counsel before it can be said that he has validly waived his rights, regardless of any other circumstances. We do not agree that *Miranda* makes such an ironclad declaration.

In *Bond v. United States,* 397 F.2d 162 (10th Cir.), the Court in discussing the requirements of *Miranda* used the following pertinent language:

"We do not read Miranda to hold that 'an express declination of the right to counsel is an absolute from which, and only which, a valid waiver can flow.' "

Cases in which it is clear that the warnings have been given must be considered on their own facts in order to determine the question of waiver. *Narro v. United States,* 370 F.2d 329, *cert. denied,* 387 U.S. 946; *State v. Perez,* 182 Neb. 680, 157 N.W.2d 162; *People v. Salcido,* 246 Cal. App.2d 450, 54 Cal. Rptr. 820; *Brisbon v. State,* 201 S.2d 832 (Fla. App.). Strong and unmistakable circumstances may upon occasion establish an effective equivalent to an express waiver. To constitute such a waiver, the attendant facts must show clearly and convincingly that the accused did relinquish his constitutional rights knowingly, intelligently and voluntarily.

It is our view, after considering all the circumstances which preceded the inculpatory statement, that the evidence supports the trial court's finding that Reed had voluntarily and effectively waived his constitutional rights before he made this statement. The trial court

therefore did not erroneously permit testimony concerning this statement in evidence.

Judgment affirmed.

MR. CHIEF JUSTICE McWILLIAMS, MR. JUSTICE KELLEY and MR. JUSTICE LEE concur.