The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Keith Andre Wayne JOHNSON,
Defendant-Appellee.

No. 81SA458.

Supreme Court of Colorado,
En Banc.

Nov. 8, 1982.

Dale Tooley, Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy, Denver, for plaintiff-appellant.

J. Gregory Walta, Colorado State Public Defender, Jess M. Perez, Deputy State Public Defender, Denver, for defendant-appellee.

ERICKSON, Justice.

This is an appeal from an order of the Denver District Court which dismissed charges of second-degree burglary, section 18–4–203, C.R.S.1973 (now in 1978 Repl.Vol. 8), and sexual assault in the third degree, section 18–3–404, C.R.S.1973 (now in 1978 Repl.Vol. 8), and suppressed the victim's identification of the defendant. The ques-

tion before us is whether the district court erred in suppressing both the lineup and the in-court identification of the defendant and in dismissing the charges against the defendant because of a Crim.P. 5(a)(1) violation. We reverse the trial court's orders suppressing identification and dismissing the charges. We remand with directions to reinstate the charges against the defendant, Keith A. Johnson, and for further proceedings consistent with this opinion.

On February 21, 1981, the victim was sexually assaulted in her apartment. Two days later, the victim identified a picture of the defendant after viewing between 400 and 500 photographs. The officer who prepared the photographic array told the victim after an identification was made that the person in the photograph was Keith A. Johnson and that he had been tried for sexual assault before.

On March 2, 1981, the defendant was arrested in Arapahoe County on unrelated charges. A warrant for the arrest of the defendant for sexual assault was issued on March 5, 1981, as a result of the victim's identification at the photographic array. On March 10, 1981, after learning that the defendant was incarcerated in Arapahoe County, the Denver police requested that Johnson be held until he could be transferred to Denver County. The defendant was moved to Denver on March 16, 1981, and was released on bond the following day. On March 24, 1981, while out on bond, the defendant, pursuant to a Crim.P. 41.1 order for non-testimonial identification, was required to appear in a lineup. At the lineup the victim again selected the defendant as her assailant. On March 25, 1981, charges were filed against Johnson and he was arrested. Prior to March 25, 1981, the record does not show that the defendant was advised of his constitutional rights by a judicial officer.

Following an extended hearing on a motion to suppress the victim's identification of the defendant, the district court found that the remarks by the police officer after the photographic identification was made were so inflammatory as to taint any subse-

quent identification, and the comments, combined with the delay in advising the defendant of his rights pursuant to Crim.P. 5, prejudiced the defendant and required that the charges be dismissed. The trial court concluded that the Crim.P. 5 violation permitted the prosecution to obtain an identification which justified the filing of the complaint and information. Therefore, dismissal of the charges was the only remedy which would correct the Crim.P. 5 violation.

In *People v. Heintze,* Colo. 614 P.2d 367 (1980), we said:

"Crim.P. 5(a)(1) provides in pertinent part: 'If a peace officer ... makes an arrest, either with or without a warrant, the arrested person shall be taken without unnecessary delay before the nearest available county or district judge.' Crim.P. 5(a)(2) imposes on the judge at the accused's first appearance the duty to inform him of, and to make certain that he understands, those basic rights applicable upon the initiation of formal criminal proceedings, especially his privilege against self-incrimination and his right to the appointment of an attorney at state expense if he is financially unable to retain one. The purpose of rule 5 is to furnish a prophylaxis against abuses in the detention process and, more importantly, to place the accused in early contact with a judicial officer so that the right to counsel may not only be clearly explained but also be implemented upon the accused's request. *See, e.g., United States v. Robinson,* 439 F.2d 553 (D.C.Cir. 1971); *United States v. Chadwick,* 415 F.2d 167 (10th Cir.1969); *Adams v. United States,* 399 F.2d 574 (D.C.Cir.1968); *cert. denied sub nom. Roots v. United States,* 393 U.S. 1067, 89 S.Ct. 722, 21 L.Ed.2d 710 (1968); *see also* 1 L. Orfield, *Criminal Procedure Under the Federal Rules* § 5.43 (1966).

"We have consistently declined to adopt a *per se* rule of exclusion in rule 5 violations; instead, we have required the defendant to show that the delay was unnecessary and that some prejudice resulted from the delay. *People v. Hosier,*

186 Colo. 116, 525 P.2d 1161 (1974); *People v. Casey,* 185 Colo. 58, 521 P.2d 1250 (1974); *People v. Gilmer,* 182 Colo. 96, 511 P.2d 494 (1973); *People v. Reed,* 180 Colo. 16, 502 P.2d 952 (1972); *People v. Weaver,* 179 Colo. 331, 500 P.2d 980 (1972); *Aragon v. People,* 166 Colo. 172, 442 P.2d 397 (1968)."

614 P.2d at 370–71.

█ A defendant must prove both unnecessary delay and prejudice to establish a right to relief for a Crim.P. 5 violation. *People v. Heintze, supra.* Here, the trial court made a specific finding that unnecessary delay occurred between the time the "hold" order was placed on the defendant in Arapahoe County and the time that he was transferred to Denver, charged with sexual assault, and advised of his rights. The record shows, however, that the defendant was incarcerated in Arapahoe County on different charges, and it is not clear what effect, if any, the Denver hold order had on the defendant. The record does disclose that defendant was not transferred to Denver because Arapahoe County had a "hold" on the defendant for failure to pay traffic fines. After the defendant was transferred to Denver, he posted bond and was released.

Assuming that there was unnecessary delay before the defendant was advised of his rights pursuant to Crim.P. 5(a)(1), he must also show under *Heintze* that he was prejudiced by the delay. *Id.* at 371. The trial court held that the delay was prejudicial because the defendant was without the assistance of counsel at the lineup on March 24, 1981. The trial court reasoned that defense counsel might have objected to the non-testimonial identification procedure or, at least, guarded against unnecessarily suggestive Crim.P. 41.1 procedures. The failure of the police to advise defendant of his right to counsel was, in the district court's opinion, prejudicial *per se.* However, nothing in the record suggests that improper procedures were used or that the lineup was unduly suggestive. The record also shows

that a public defender was present during the lineup.

█ In our view, the trial court erred in suppressing the lineup identification.[1] Nothing in the record supports the trial court's finding of prejudice to the defendant as a result of the asserted Crim.P. 5(a)(1) violation. In *People v. Heintze, supra,* we said that prejudice could be inferred if the "unreasonable delay reasonably contributed to the challenged evidence." 614 P.2d at 372. Here, the record is silent on whether the Denver "hold" order caused defendant to be detained in Arapahoe County. The defendant was free on bond for seven days before he participated in the lineup, was never interrogated, and did not make any incriminating statements.

█ When the propriety of an identification is at issue, the question of whether there is a substantial likelihood of irreparable misidentification is determined by examining the totality of the circumstances. *People v. Nees,* Colo. 615 P.2d 690 (Colo. 1980); *People v. Pickett,* 194 Colo. 178, 571 P.2d 1078 (1977). Here, the record does not support the trial court's conclusion that the officer's comments to the victim led to a substantial likelihood of irreparable misidentification. The victim testified that she would never forget her assailant's face. Her initial identification of the defendant's photograph was made *before* the police officer uttered his comments. The victim also said she had an opportunity to view her assailant for nearly twenty minutes during the assault under well-lit, day light conditions. At the time she reported the crime, she also gave a detailed description of her assailant which matched defendant's physical characteristics. Even if the comment had tainted the subsequent identification at the lineup, the victim still had an independent basis for a later in-court identification based on the events which occurred prior to the comments. *Huguley v. People,* 195 Colo. 259, 577 P.2d 746 (1978); *People v. Watkins,* 191 Colo. 440, 553 P.2d 819 (1976).

---

1. The trial court at the preliminary hearing held that the in-court identification had an independent basis. In dismissing the charges, the trial court reversed its previous finding that the in-court identification had an independent basis.

We will not overturn the findings of the trial court when the findings are supported by the record, even though we might have reached a different conclusion had we been the trier of fact. *Adler v. Adler,* 167 Colo. 145, 445 P.2d 906 (1968). However, factual findings must be set aside when they are "so clearly erroneous as not to find support in the record." *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). *See also Briano v. Rubio,* 141 Colo. 264, 347 P.2d 497 (1959). The record does not support the trial court's findings and conclusions and therefore the court committed error in suppressing the identification and dismissing the charges against the defendant. Dismissal of the charges based upon a violation of Crim.P. 5 is seldom, if ever, the proper remedy. *Accord People v. Wolf,* 635 P.2d 213 (Colo.1981); *People v. Litsey,* 192 Colo. 19, 555 P.2d 974 (1976). At most, under the facts of this case, the proper remedy would have been to suppress the evidence acquired because of the procedural violation. *See People v. Heintze, supra.*

Accordingly, we reverse the suppression order and remand to the district court with directions to reinstate the charges and to permit the prosecution to proceed with its case.