**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Jamal Salem ELAGNAF, Defendant-Appellant.**

**No. 89CA2117.**

Colorado Court of Appeals, Div. I.

Nov. 7, 1991.

Rehearing Denied Dec. 5, 1991.

Certiorari Denied May 18, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Harry A. Tucker, Jr., Rennard E. Hailey, Grand Junction, for defendant-appellant.

Opinion by Judge PIERCE.

Defendant, Jamal Salem Elagnaf, appeals a judgment of conviction entered on a jury verdict finding him guilty of possession of cocaine. We affirm.

In June of 1988, defendant was arrested for an immigration violation and was awaiting deportation. At that time, the Grand Junction Police Department was conducting an ongoing investigation of an individual named Joseph Starr who was suspected of running a narcotics distribution organization. An officer involved in this investigation offered to help defendant remain in this country in exchange for information on Starr's drug trafficking activities. Defendant agreed to this arrangement and provided the officer with information about Starr on June 29, 1988, and on two other occasions.

Based on information from several informants, including the defendant, the police learned that persons interested in purchasing cocaine would contact Starr through a pager, identify themselves by code number, leave a return phone number, and await a return phone call to arrange for the transaction. This information was used to obtain a court order authorizing a wire tap of Starr's pager.

On May 14, 1989, when defendant was no longer acting as an informant, the police intercepted a call to Starr's pager. An officer was dispatched to the location from which the call had been made, but before reaching there he saw Starr's van, followed closely by a blue car, driving away from the area. The officer followed the van and the car until they stopped and saw defendant leave the passenger compartment of the van and enter the car. The officer continued to follow the car and was subsequently instructed by another officer to stop the car and search the defendant for cocaine.

After the car was stopped and defendant was briefly questioned, he attempted to flee. He was apprehended, and officers found a bag of cocaine in his pants.

Defendant was then taken to the police administration building for questioning. The officer who conducted the interview testified that he did not verbally inform the defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), but rather gave defendant a written advisement form and obtained assurances from defendant that he understood the information on the form.

Because of what the officer described as a combative attitude, defendant remained handcuffed during this interview. Hence, he was unable to sign the advisement form acknowledging his understanding of the rights described. The following day defendant was again interviewed. He again was given a written advisement form before the interview and signed that form in front of two officers. During both interviews, defendant admitted purchasing cocaine from Starr.

The defendant was released from jail later that day and again agreed to work as

an informant for the police. He attempted to learn more about Starr's drug operation and on May 29, 1989, telephoned a police officer to describe a deal he was trying to arrange with Starr involving the trade of a vehicle for cocaine. During that phone conversation, the defendant made statements further incriminating himself.

## I.

Defendant first contends that the statements he made to the police on June 29, 1988, with respect to his previous cocaine purchases from Starr were made while he was in custody. He argues, therefore, that because the interview was not preceded by a *Miranda* advisement, the trial court erred in refusing to order the suppression of the statements at his trial. We disagree.

■ An accused must be advised of the privilege against self-incrimination and the right to counsel as a prerequisite to the prosecution's use of any statement made by him as a result of custodial interrogation. *Miranda v. Arizona, supra.* However, not all police questioning falls within the protection of *Miranda.*

■ The record shows that the challenged statements were properly admitted at defendant's trial. Although there is no question that, on June 29, 1988, defendant was in custody as the result of an immigration violation, we conclude that he was not interrogated on that date.

The officers who interviewed him and suggested he cooperate in the drug investigation told defendant they did not intend to prosecute him for any previous criminal activity. Also, there is no indication that the police considered defendant a suspect in a particular crime or current investigation. *See People v. Downer,* 192 Colo. 264, 557 P.2d 835 (1976). Nor does the record show that they were attempting to elicit an incriminating response from defendant during the June 1988 interview.

Furthermore, we are not persuaded that defendant's statements were made as the result of police coercion. To the contrary, the unrefuted evidence in the record indicates that in the June 1988 interview, defendant voluntarily discussed his role as an informant with the police. *See United States v. Olmstead,* 698 F.2d 224 (4th Cir. 1983). Under these circumstances, no *Miranda* warnings were required.

## II.

■ Defendant also contends the trial court erred in denying his motion to suppress the cocaine seized from him on May 14, 1989. He maintains that the police lacked probable cause to stop the car, thus rendering the warrantless seizure of the cocaine illegal. We disagree.

Under the totality of the circumstances here, the police had not only reason to stop, but also reason to arrest. *See People v. Ratcliff,* 778 P.2d 1371 (Colo.1989). Inasmuch as the arrest was valid, it follows that the search was proper. *People v. Lagrutta,* 775 P.2d 576 (Colo.1989). Under these circumstances, there was no error in the trial court's denial of defendant's motion to suppress the cocaine.

## III.

Defendant next contends that his statements made to the police on May 14 and May 15 were inadmissible because he did not knowingly and voluntarily waive his *Miranda* rights prior to being questioned. He also argues the statements were made as the result of police promises and coercion, thus rendering them involuntary. We do not agree that the statements should have been suppressed.

■ After being advised of his rights pursuant to *Miranda,* a suspect may waive his rights provided the waiver is knowingly, intelligently, and voluntarily made. The validity of a waiver must be assessed on the basis of the totality of the circumstances surrounding the custodial interrogation, and specifically, a court must determine whether the waiver was the product of free and deliberate choice, rather than intimidation, coercion, or deception, and whether it was made with a full understanding of the consequences. *People v. Hopkins,* 774 P.2d 849 (Colo.1989).

■ We initially conclude that although it may be better practice for an officer verbally to inform a suspect of his rights pursuant to *Miranda*, a waiver will not automatically be held invalid simply because the advisement was made only by use of a written document. *Miranda* warnings need not be given in any particular format, provided the warnings given reasonably convey to the suspect those rights described in the *Miranda* decision. *Duckworth v. Eagan*, 492 U.S. 195, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989). Hence, under certain circumstances, a waiver may be constitutionally acceptable where the advisement has not been made verbally. *See Jaggers v. People*, 174 Colo. 430, 484 P.2d 796 (1971).

■ A reviewing court must assess the appropriateness of the advisement and the validity of the waiver based on the particular facts and circumstances in a given case. *See People v. Hopkins*, 774 P.2d 849 (Colo. 1989).

■ Here, although defendant testified he was not informed of his *Miranda* rights, the court found the contrary testimony of a police officer to be more convincing. The officer testified that, prior to the May 14, 1989, interview, he specifically asked the defendant whether he could read and understand English. When defendant responded in the affirmative, the officer gave him a written form containing *Miranda* warnings. The officer testified that, after reading the form, defendant stated that he understood his rights and wanted to talk to the officer. He denied that any coercive tactics were utilized. The same procedure was used prior to the May 15, 1989, interview, although defendant was not handcuffed at the second interview and was therefore able to sign the written waiver form.

We agree with the trial court that the *Miranda* warnings given here were sufficient and that defendant's waiver was valid.

The court concluded that defendant was not a credible witness and, therefore, rejected his testimony that he was not advised of his rights and that the police used coercive tactics. Defendant's memory at the suppression hearing was selective, and there was ample evidence that he could read and understand the English language. Hence, the record contains support for the trial court's findings of fact, and thus, they are binding on appeal. *See People v. Fish*, 660 P.2d 505 (Colo.1983).

Nor has defendant shown that his two decisions to talk to the police were involuntary. The trial court considered the totality of the circumstances, including the details of the interrogation and the conduct and characteristics of the defendant, *see People v. Parks*, 195 Colo. 344, 579 P.2d 76 (1978), and concluded the statements were made voluntarily. The record sufficiently supports this finding. The prosecutor established the validity of the waivers by a preponderance of the evidence, and therefore, the court had no basis to suppress the statements.

IV.

■ We are not persuaded by defendant's additional contention that statements he made on May 29, 1989, while acting as a confidential informant, were inadmissible because they were not voluntary. The trial court's findings and conclusions about the voluntary nature of these statements are amply supported by the record. Moreover, even if they were without evidentiary support, the error would have been harmless since there is overwhelming evidence indicative of defendant's guilt that was properly admitted.

V.

Defendant's final contention is that the court erred in failing, *sua sponte*, to declare a mistrial when a police report not introduced as an exhibit at trial was inadvertently given to the jury for use during the deliberations. He concedes that no objection was raised at the time, but contends that as a result of this event, plain error was occasioned. We disagree.

■ Under a plain error standard of review, a conviction will not be reversed unless the alleged error substantially influ-

enced the verdict or seriously affected the rights of the accused and the fairness of the proceedings. Crim.P. 52(b); *People v. Rodgers,* 756 P.2d 980 (Colo.1988).

A mistrial is the most drastic of remedies and warranted only in those situations when the prejudice is too substantial to be remedied by other means. *People v. Abbott,* 690 P.2d 1263 (Colo.1984). The decision to grant or deny a motion for mistrial is within the discretion of the trial court, which is in the best position to address or assess the effect of trial irregularities on the jury. *People v. Gladney,* 194 Colo. 68, 570 P.2d 231 (1977).

We cannot say that the court's failure to declare a mistrial was error. The jury was given a curative instruction, and we presume that instruction was understood and heeded. *People v. Smith,* 620 P.2d 232 (Colo.1980). Moreover, the defendant has failed to show that the jury's exposure to an exhibit which was referred to during the trial and contained information cumulative to the testimony of one of the trial witnesses prejudiced his defense. Under these circumstances, we conclude no error, much less plain error, was occasioned.

Judgment affirmed.

SMITH and DAVIDSON, JJ., concur.